UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| TERRY S. ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-560 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. On November 15, 2004, plaintiff filed his applications for benefits, claiming a November 6, 2004 onset of disability. (A.R. 56-65). Plaintiff's claims were denied on initial review. (A.R. 24-34). On February 22, 2006, plaintiff received a hearing before an administrative law judge at which he was represented by counsel. (A.R. 248-75). On March 7, 2006, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-23). On June 2, 2006, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision. On August 4, 2006, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. Plaintiff argues that the court should overturn the Commissioner's decision on the following grounds:

      I.       THE ALJ LACKED SUFFICIENT REASON[S] TO REJECT PLAINTIFF'S CREDIBILITY[; AND]

      II.      THE ALJ MISCHARACTERIZED THE RECORD EVIDENCE[.]

(Statement of Errors, Plf. Brief at 2, docket # 11). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of

choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of November 6, 2004, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Plaintiff had severe impairments of "degenerative disc disease of the lumbar spine [status-post laminectomy surgeries in 1987 and 1996] and degenerative disc disease of the cervical spine [status-post November 2001 surgery]." (A.R. 17). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ determined that plaintiff's subjective complaints were not fully credible:

> [T]he undersigned assigns the November 2004 [opinion] of Dr. Dubravec with significant weight because the opinion is consistent and well supported by the record as a whole. Moreover, the undersigned has afforded the claimant with a reasonable benefit of the evidence by including limitations of the neck, even though such limitations are not documented in the record for the period since the alleged onset date.
>
> The opinion and determination of the non-treating, non-examining physicians of the State Agency (exhibit 8F) have been given some reduced weight because of the evidence of medical treatment following the March 2005 determination as well as the claimant's first-hand hearing testimony.
>
> At the hearing, the claimant testified that he is five feet and six inches tall and weighs 200 pounds, which he described as his normal weight. He stated that he has four adult children. He said that he has a high school education and no vocational training and that he has not worked since November 6, 2004. The claimant stated that he did go back to work following back surgeries in 1987 and 1996. He said that the back pain returned in 2002. The claimant reported having an additional cervical spine fusion surgery in November 2001. While the claimant's doctor has discussed an additional back surgery, the claimant said that he is not yet ready for it. He described his current symptoms as constant pain in the back and legs; and he stated that sitting or standing for a period of time as well as using the stairs, lifting and bending all aggravate the back pain. He noted that he takes Altrim and Flexeril for pain which cause him to be sleepy. For this reason, he waits until a couple of hours after taking the Altrim before driving. The claimant said that his sleep is made difficult by pain, although he takes medication before going to bed. He estimated that he sleeps for five to seven hours in a given night.
>
> The claimant said that he is limited to walking a distance of one-quarter mile. He said he can stand for 25 or 30 minutes if he is able to move about and to stand for 15 minutes if he is standing still. He said that he can sit for 30 to 40 minutes at one time. He said that he could lift 10 to 15 pounds at a table level and that he can only pick up a couple of pounds close to his body. He stated that he tries to limit driving to 15-minute increments due to increasing leg pain and generally drives only when he is alone. He said that he no longer goes bowling, fishing or hiking as he had in the past. He said that he needs help putting on his socks and shoes. The claimant stated that he has "bad" days once or more per week.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. While the record reasonably supports the contention that the claimant is not able to perform physically demanding work that he has performed in the past, it does not support a conclusion of limitations that are work-preclusive of substantial gainful activity.

> The record does not substantiate ongoing limitations involving the claimant's neck; however, some limitations of the neck have been included in the aforementioned residual functional capacity because of the history of cervical spine surgery as well as the reduced cervical extension and rotation upon physical examination. The record does not document or reflect the "bad" days regarding back pain about which the claimant testified at the hearing. While the claimant reported doing some physical therapy exercises at home, it does not show that he has participated in any extensive physical therapy program since November 2004 other than an initial evaluation. Additionally, he did not require a formal physical medicine and rehabilitation program since the alleged onset date. He has not been examined by a psychiatrist as advised by his doctor, although permission from the claimant's employer and/or insurance provider may be a barrier. The record does not document in any way migraine or other headaches that the claimant alleged at the hearing. The claimant has not sought medical treatment for headaches even while he received medical care for other conditions. The claimant has reasonably good flexion of the lumbar spine to 70 out of 90° and has zero degrees of lumbar extension. Lateral lumbar flexion and rotation are also somewhat reduced. In summary, while the claimant reasonably has restrictions in the ability to perform basic work activities, these limitations do not reasonably prevent him form performing substantial gainful activity since November 6, 2004, the alleged onset date.

(A.R. 20-21).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push, and pull a maximum of fifteen pounds. He cannot reach more than 18 inches from the body. He cannot work below knee-level and must be able to alternate between sitting and standing as needed. He is able to climb, balance, stoop, crouch, kneel, and crawl occasionally. The claimant cannot perform frequent turning or prolonged flexion of the neck.

(A.R. 19). Plaintiff was unable to perform his past relevant work. Plaintiff was forty-six years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. The ALJ found that plaintiff has a high school education. The ALJ found that the transferability of job skills was not material to the determination of disability. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately

5,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 269-71). The ALJ held that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 15-23).

**1.**

Plaintiff argues that the ALJ "lacked sufficient reason[s] to reject plaintiff's credibility" (Plf. Brief at 2, docket # 11). This court does not make its own credibility determinations or substitute its credibility assessment for that of the ALJ. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *West v. Commissioner*, 240 F. App'x 692 (6th Cir. 2007). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity

to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff argues that a requirement in the regulations that a claimant's subjective complaints "be taken into account" means that the ALJ must generally accept the plaintiff's complaints as true. In support of this argument, plaintiff's cites a misleadingly selective excerpt from 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3). (Plf. Brief at 8). Section (c)(3) is quoted below, with those few terms that plaintiff emphasizes presented in italics:

> (c) Consideration of other evidence. Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. *Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations* and restrictions which you, your treating or nontreating source, or other persons report, *which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account* as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled.[1] We will consider all of the evidence presented, including information about your

---

[1] "[T]aken into account as explained in paragraph(c)(4)" is the precise language of 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Plaintiff's brief and reply brief omit any citation to or discussion of subsection (c)(4), which clearly does not require the ALJ to uncritically accept a claimant's subjective complaints:

> How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities. In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts

>prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. Section 404.1527 explains in detail how we consider and weigh treating source and other medical opinions about the nature and severity of your impairment(s) and any related symptoms, such as pain.[2] Factors relevant to your symptoms, such as pain, which we will consider include:
>
>>(i) Your daily activities;
>>(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>>(iii) Precipitating and aggravating factors;
>>(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>>(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see* 20 C.F.R. § 416.929(c)(3). The requirement that the plaintiff's statements regarding his subjective limitations be "taken into account" does not mean that the ALJ must accept the plaintiff's statements as being true. *See e.g.*, *Rebull v. Massanari*, 240 F. Supp. 2d 265, 274 (S.D.N.Y. 2002) ("As § 416.929(c)(3) and (c)(4) make clear, the ALJ is obligated only to consider the complainant's subjective complaints, not to accept all of them as dispositive.").

---

>between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4); *see* 20 C.F.R. § 416.929(c)(4).

[2]This sentence in 20 C.F.R. § 416.929(c)(3) contains a reference to section 416.927 rater than section 404.1527. Furthermore, section 416.929(c)(3) contains a sentence regarding a child's claim for SSI benefits which has no counterpart in the DIB regulation, and which obviously does not apply to plaintiff's claims for benefits.

Upon review of the administrative record, I find that the ALJ's credibility determination is supported by more than substantial evidence. Plaintiff submitted very little medical evidence in support of his claims for DIB and SSI benefits. He claimed a November 6, 2004 onset of disability, yet most of the evidence that plaintiff presented in support of his claims predates his alleged onset of disability by a number of years. (A.R. 139-63, 168-80, 184-91). Plaintiff had a remote history of back surgeries in 1987 and 1996 to repair herniated discs in his lower back (A.R. 139-40) and a neck surgery in 2001.[3] There is no evidence of surgical complications. Plaintiff returned to work after each of these procedures.

In early November 2004, plaintiff was a management trainee at a Wendy's fast food restaurant located in Cedar Springs, Michigan. On November 8, 2004, plaintiff presented himself at an emergency room complaining of back pain. Plaintiff was not in any acute distress. Plaintiff stated that six days earlier, on November 2, 2004, he had experienced some back pain after lifting boxes at work.[4] Plaintiff gave his medical history and related that Dr. Hamati had performed surgery years earlier. Plaintiff stated that he had been doing "quite well" since that time. (A.R. 192). Upon examination, plaintiff had 5/5 muscle strength bilaterally, had a good range of motion in his back, and had no pain in his back during straight leg raising tests. Plaintiff had normal deep tendon reflexes in his lower extremities bilaterally. X-rays of plaintiff's lumbar spine were negative for any subluxation or fracture. There was no evidence of disc space narrowing and the degenerative

---

[3] Plaintiff did not submit the hospital or other medical records generated in connection with his 2001 neck surgery. The record is limited to plaintiff's reports that he underwent surgery. (A.R. 172, 227).

[4] Plaintiff's pre-hearing statement indicates that he pursued a worker's compensation claim. (A.R. 138).

changes observed were described as "mild." Plaintiff was provided with over-the-counter Tylenol and a short-term Flexeril prescription. (A.R. 192-94).

The ALJ gave significant weight to the opinion of plaintiff's treating physician Iveta Dubravec, M.D. (A.R. 20). Dr. Dubravec began treating plaintiff at Spectrum Health on November 10, 2004. She found that plaintiff's straight leg raising tests were normal in the sitting and supine positions. Plaintiff's deep tendon reflexes were equal bilaterally. Plaintiff had full extension. Dr. Dubravec found that plaintiff had "a decreased range of motion, about 30 cm from the floor." (A.R. 218). Dr. Dubravec diagnosed plaintiff's condition as a lumbar strain. Plaintiff was advised to continue taking over-the-counter Tylenol, undertake a home exercise program, and apply ice to the sore area. (*Id.*). Dr. Dubravec found that the following work restrictions were appropriate: no lifting, pushing or pulling greater than 15 pounds; avoid repetitive stooping, bending or twisting; no reaching more than 18 inches from the body; no work below knee level; and to alternate between sitting and standing as needed. (A.R. 218-19). On November 17, 2004, Dr. Dubravec observed that plaintiff performed normal heel and toe walking and that plaintiff had normal strength in his lower extremities. Plaintiff was neurologically intact. Dr. Dubravec indicated that plaintiff could return to work immediately with the above-referenced restrictions. (A.R. 211-12). On November 24, 2004, Dr. Dubravec observed that plaintiff was not in any acute distress. She reiterated that plaintiff was capable of returning to work with the above-referenced restrictions. (A.R. 206-07).

Plaintiff was examined by Physician's Assistant Richard G. Erad at Spectrum Health on November 30, 2004 (A.R. 202-04, 246-47) and December 23, 2004 (A.R. 197-200), and on both occasions plaintiff reported that he was not taking any medications. The latter examination revealed

that plaintiff had a full range of motion. Plaintiff's gait was normal. A diagnosis of low back pain was offered. (A.R. 197).

A February 24, 2005 x-ray report indicated that plaintiff's lumbosacral spine had normal alignment. Posterior elements appeared intact and his sacroiliac joints appeared normal. There was "mild narrowing at L4-5 disc" which was described as a "[m]inimal degenerative change." (A.R. 231). On February 24, 2005, Donald Sheill, M.D., conducted a consultative examination. (A.R. 227-30). Plaintiff advised Dr. Sheill that he was not taking any medication. (A.R. 227). Dr. Sheill found that plaintiff's extremities were symmetric with no peripheral atrophy or edema. (A.R. 228). Dr. Sheill made these additional findings:

> Inspection of the thoracolumbar area is unremarkable except for a medium length lumbar scar. There is no focal tenderness. SLR in the supine position is painful in the Ipsilateral lower back at 60 degrees left and right. In the seated position he appears comfortable at 80 degrees SLR left and right. Reflexes are +1 at the patella and Achilles bilaterally. He exhibits normal strength walking on heels and toes and he can squat and recover partially. Tandem gait is normal. He does not exhibit any antalgia or other gait disturbance. Sensory is full throughout the hands and feet. There are no lateralizing findings and the patient was found to be alert and oriented times three.

(A.R. 228).

On December 12, 2005, plaintiff returned to Yousif I Hamati, M.D., for a "second opinion with option to treat." (A.R. 242-43). Dr. Hamati noted that he had not seen plaintiff since 1997. (A.R. 242). Dr. Hamati performed an examination and reviewed plaintiff's September 23, 2005 MRI. (A.R. 244-45). Dr. Hamati concluded that plaintiff, "[W]ould benefit from [a] radical discectomy at L4-5, 5-S1, and interbody fusion with pedicle screws. This should not be done unless the quality of life is poor. As far as his work status, he should avoid any heavy lifting, bending, stooping and twisting." (A.R. 243).

The ALJ's findings and RFC determination are completely consistent with all the medical evidence. I find that there is more than substantial evidence supporting the ALJ's credibility determination.

**2.**

Plaintiff's remaining arguments are that the Commissioner's decision should be overturned because the ALJ "mischaracterized" (1) the record regarding plaintiff's headaches; and (2) the record regarding plaintiff's neck limitations. (Plf. Brief at 12). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.

Plaintiff testified at his February 22, 2006 hearing that he experienced migraine headaches "at least once a week," and that "about every other week" he experienced a migraine headache which lasted two or three days. (A.R. 261-62). The ALJ's opinion stated that, "The record does not document in any way migraine or other headaches that the claimant alleged at the hearing. The claimant has not sought medical treatment for headaches even while he received medical care for other conditions." (A.R. 21). The ALJ correctly observed that the record does not include evidence that plaintiff required medical treatment for migraine or other headaches at any time from his alleged onset of disability through the date of the ALJ's decision. Plaintiff's pre-hearing statement did not list headaches as being among plaintiff's severe impairments. (A.R. 136). The hearing transcript of the ALJ's questioning of plaintiff reveals that the ALJ was well aware of plaintiff's remote history of treatment for migraine headaches. (A.R. 260). Plaintiff testified that his headaches had not prevented him from working. (A.R. 261; *see* A.R. 174, 179). On June 24, 2003, more than a year before plaintiff's alleged onset of disability, plaintiff told Dr. LaCalamito

that he did not currently have a headache, but stated that he had recently sought emergency room for treatment for a headache, and claimed that he experienced headaches once a week.  (A.R. 166).  On February 24, 2005, plaintiff reported a history of migraine headaches to Dr. Sheill.  (A.R. 227). There is no record indicating plaintiff required medical treatment for headaches at any time during the period plaintiff claims to have been disabled.  The ALJ did not mischaracterize the record regarding plaintiff's headaches.

Finally, plaintiff argues that the ALJ "mischaracterized" the record when he stated that the record did not "substantiate ongoing limitations involving the claimant's neck . . . ."  (Plf. Brief at 12).  Plaintiff ignores the remainder of the sentence in which emphasized that the ALJ's RFC determination included a limitation against "frequent turning or prolonged flexion of the neck" based on plaintiff's history of "cervical spine surgery as well as reduced cervical extension and rotation on physical examination."  (A.R. 21).  Plaintiff testified that he experienced neck pain, and that he could not perform a job unless it required "very little" head turning, and that he could "[d]efinitely not" perform work requiring him to look down for extended periods.  (A.R. 259).  Plaintiff also testified, among other things, that continued to drive a car.  (A.R. 264).  Plaintiff's argument that the ALJ "mischaracterized" the record is inaccurate, and does not provide a basis for disturbing the Commissioner's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  December 17, 2007         /s/  Joseph G. Scoville
                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).